UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                    *
French, Colton                      *
        Plaintiff                   *
                                    *        Docket No: New Complaint
    v.                              *
                                    *
Dartmouth College                   *
        Defendant                   *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## **COMPLAINT**

1. The plaintiff, Colton French, is a citizen of Portland, Oregon, and resides at 12024 SW 12th Place.

2. The defendant Dartmouth College is an institution of higher learning incorporated in New Hampshire, with a principal place of business at 14 S Main Street, Ste 2-C, Hanover, New Hampshire, 03755.

3. The amount in controversy exceeds $75,000.00.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, diversity of citizenship.

5. On February 9, 2016, plaintiff Colton French was a student at Dartmouth College in his freshman year.

6. The plaintiff had been recruited by the defendant, and its agents, including head baseball coach Bob Whalen, in part because of his baseball skills, including pitching.

7. The plaintiff had played baseball as a child and in high school, but had never pitched in either a game or practice (from behind an "L" screen) which utilized an "L" screen while pitching to a live batter.

8. Prior to February 9, 2016, the plaintiff had not received any instruction or training in pitching live from behind an "L" screen.

9. An "L" screen, so-called because of its shape, is marketed and sold by sports equipment companies to be used for batting practice. During a typical batting practice, a coach or other individual sits or stands behind the screen and tosses balls to the batter from 20-40 feet, generally ending in an erect position, but does not engage in the full effort windup or stretch/set position and corresponding pitching motion which a pitcher would use in a competitive game situation. This allows the individual tossing the ball to remain behind the screen during and after the ball is tossed, thus protecting him from being struck by a batted ball.

10. The "L" screen does not provide that protection if the individual does not remain behind it.

11. It is not always possible for the individual tossing/throwing the ball to know if he is staying behind the screen, and on occasion his head may inadvertently extend beyond and/or above the screen during the throwing motion.

12. The likelihood of such an inadvertent event is increased when a pitcher is using the "L" screen for pitching practice to a live batter, because a pitch which is comparable to that thrown in a competitive game utilizes a forceful motion which pulls his head forward and to the side.

13. It is also more likely that a pitcher will not realize that his head has extended beyond the "L" screen when he is pitching competitively, because his focus and

attention are on the ball and the target, not on the position of his head when he follows through with the pitch.

14. On February 9, 2016, the plaintiff was instructed by his coaches, who were at all times acting as agents of the defendant, to participate in pitching practice in the indoor facility known as Leverone Arena.

15. Leverone Arena, and all the equipment used in that practice, including an "L" screen, were owned and maintained by the defendant.

16. The facility was poorly lit, and the plaintiff was told to practice in a narrow "cage" enclosed by netting, from behind an "L" screen, while at the same time another pitcher was pitching to another batter in a cage behind the batter to whom the plaintiff was pitching, without a solid background that would prevent the plaintiff from being distracted by the pitching/batting action in the other cage.

17. This reduced the plaintiff's ability to concentrate on his placement behind the screen, and to see and react to a ball coming toward him.

18. The "L" screen from behind which the plaintiff was pitching was old, and age- and skill- inappropriate for college or professional level baseball activity, and, when the plaintiff was standing on the wooden "mound" constructed by the defendant, his head was above the screen.

19. The defendant discarded the screen after the plaintiff was injured, and replaced it with one of a college and professional level quality.

20. The defendants knew or should have known of the risk of injury to the plaintiff by being hit by a batted ball in the circumstances alleged.

21. None of the defendant's agents gave the plaintiff any instruction or training in the safe use of the "L" screen for pitching to a live batter.

22. The plaintiff had not previously practiced pitching in an indoor facility using an "L" screen.

23. The plaintiff was not aware of the risk of injury to which he was subject, as the presence of the "L" screen, coupled with the lack of any warning and/or instructions from his coaches, created a false sense of security.

24. The plaintiff was eager to perform well during the pitching practice, in order to earn a spot in the starting pitching rotation and be selected to travel with the team to a spring training event in Florida.

25. During the practice, although the defendant's agents, the coach and assistant coaches, were observing and videotaping the plaintiff, none of them gave him any instruction in the safe use of the "L" screen to protect himself, monitored or advised him that he was not remaining completely behind the screen.

26. As a result, during at least one of the pitches he threw, the plaintiff's head extended beyond the screen.

27. The plaintiff's last such pitch was hit forcefully by the batter at the plaintiff's face, crushing his right eye socket and fragmenting his facial bones.

28. The plaintiff required emergent medical care, and has since undergone numerous surgeries and other medical treatment, resulting in expenses which exceed $430,000.

29. The plaintiff has lost the vision in his eye, and the bones surrounding it are permanently disfigured.

30. The plaintiff has a metal plate in his head, and, because of his loss of vision, and the risk of further injury or death, can no longer play baseball or other sports of a contact nature or which require depth perception/peripheral vision.

31. The plaintiff will also be unable to engage in any job or profession which requires full peripheral vision, depth perception, or ability to visualize small details.

32. As a result of his injuries, and their life-altering effect on him, the plaintiff has suffered from depression and anxiety, for which he has required counseling.

33. As a result of his physical and emotional disabilities, the plaintiff was unable to return to school for the remainder of the 2015-2016 academic year, which will delay his graduation and ability to enter the workforce and earn a living.

## COUNT I – NEGLIGENCE – IMPROPER USE AND MAINTENANCE OF EQUIPMENT AND FACILITIES

34. The allegations of paragraphs 1-33 are incorporated herein by reference.

35. The defendant, by its agents, servants and employees, owed a duty to the plaintiff to use reasonable care to become familiar with the proper use and care of the "L" screen so that it could effectively perform its intended function of protecting individuals throwing balls in batting practice.

36. The defendant also owed a duty to the plaintiff to provide a facility that was adequately lighted, and free of visual clutter and activities that would serve to distract players from concentrating on safety and self-protection.

37. The defendant breached those duties by, *inter alia,* using the screen for competitive live pitching practice to a live batter, in which circumstances it is not probable that the screen will always and unfailingly perform its intended protective safety function, for the reasons alleged herein.

38. The defendant also breached those duties by failing to ensure that the screen was dimensionally large enough to adequately protect a tall player like the plaintiff,

who is standing on an artificial mound, and by failing to monitor his pitching style and adjust its location to the size and pitching style of the plaintiff.

39. The defendant otherwise failed to use due care in the selection, use, and maintenance of the "L" screen, and in the provision of clutter-free and well-lighted facilities.

## COUNT II – NEGLIGENCE – FAILURE TO WARN AND INSTRUCT

40. The allegations of paragraphs 1-39 are incorporated herein by reference.

41. The defendant, by its agents, servants and employees, owed a duty to the plaintiff to use reasonable care to warn him of the risks of pitching in a competitive manner from behind the "L" screen, including the risk that, due to the deficiencies of the screen and its placement, and the positioning of his body as he followed through with his pitching motion, as previously alleged, his head might extend beyond the screen.

42. The defendant also owed a duty to the plaintiff to instruct him in the proper way to pitch in a competitive manner from behind the screen, so as to remain behind it and maximize its protective effect.

43. The defendant, by its agents, servants and employees, breached those duties and failed to use reasonable care to warn the plaintiff of the risks of pitching to a live batter from behind an "L" screen and instruct him how to do so while remaining behind the screen and maximizing its protection.

## COUNT III – NEGLIGENCE – FAILURE TO SUPERVISE

44. The allegations of paragraphs 1-43 are incorporated herein by reference.

45. The defendant, by its agents, servants and employees, owed a duty to the plaintiff to use reasonable care to observe, monitor and supervise him while he was

pitching, to ensure that the screen was appropriately placed for maximum protection, and that he remained completely behind it during and after each pitch, and, in the event that he did not, to warn and instruct him how to stay behind it and/or reposition/replace the "L" screen.

46. The defendant breached those duties and, even though the coach and assistant coaches were videotaping the plaintiff's pitches and were aware or should have been aware that he was not staying completely behind the screen, never warned him of that fact or instructed him how to stay behind the screen while still pitching effectively to a live batter.

## COUNT IV – SPOLIATION

47. The allegations of paragraphs 1-46 are incorporated herein by reference.
48. The defendant knew or should have known that as a result of the plaintiff's life-threatening and horrific injuries, there was likely to be an investigation into the cause of those injuries, both to determine whether there might be civil liability on anyone's part, and also to help prevent future such injuries.
49. Therefore, the defendant knew or should have known that it was important, and it had a legal obligation to, preserve evidence that would assist in such an investigation.
50. The defendant owed a duty to preserve all such evidence, including the "L" screen, and videotapes of the pitch which resulted in the plaintiff being hit.
51. The defendant breached that duty by discarding the "L" screen and videotape without consulting the plaintiff or any judicial authority, and obtaining either an order or agreement permitting it to do so.

52. As a result of the defendant's breach, the plaintiff has been deprived of evidence which is necessary to the proof of his allegations, and he is entitled to a jury instruction adverse to the defendant and other remedies, as ordered by the court.

## DAMAGES

53. The allegations of paragraphs 1-52 are incorporated herein by reference.

54. As a result of the defendant's breaches, as alleged herein, the plaintiff has suffered and will continue to suffer from the physical and emotional injuries alleged, some of which are permanent in nature, as well as associated financial losses, including medical bills, travel expenses, educational expenses, loss of income and future earnings, loss of earning potential, and lifelong regret, disappointment, sadness, and loss of enjoyment of life because of his inability to pursue a baseball career, or even to play baseball recreationally, or pursue other recreational, social, and professional opportunities.

55. The plaintiff seeks damages for those losses, in the full amount allowed by the laws of the State of New Hampshire, including interest and costs.

Respectfully Submitted,

Colton French

By: NIXON, VOGELMAN, SLAWSKY & SIMONEAU, PA

Dated: July 26, 2018

/s/Leslie C. Nixon
Leslie C. Nixon, Esquire (# 1880)
77 Central Street
Manchester, NH 03101
(603) 669-7070
lnixon@davenixonlaw.com